## UNITED STATES v. FITTS et al.

### (District Court, S. D. New York. June 3, 1912.)

**1. LIMITATION OF ACTIONS (§ 11*)—ACTION BY UNITED STATES.**

A state statute of limitations is not available for an action by the United States.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. § 11.*]

**2. INTERNAL REVENUE (§ 28*)—LEGACY TAXES—ACTION TO RECOVER.**

The legacy tax imposed by War Revenue Act June 13, 1898, c. 448, §§ 29, 30, 30 Stat. 464, 465 (U. S. Comp. St. 1901, pp. 2307, 2308), is not a debt of the decedent's estate, and the United States cannot maintain an action at law to recover the same against the executor or administrator in his representative capacity, but the remedy is by an action to enforce payment from the property subject to the tax, which may be against the executor or administrator where the estate has not been distributed, and he has actual or constructive possession of the same, or against any other person or persons having such possession.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 76–81; Dec. Dig. § 28.*]

Internal revenue tax on legacies, inheritance and transfers, see note to Ward v. Sage, 108 C. C. A. 417.]

At Law. Action by the United States against Mary E. Fitts and William B. Fitts, as executrix and executor of the last will of Friend P. Fitts, deceased. On motion by defendant Mary E. Fitts for directed verdict. Motion sustained.

Henry A. Wise, U. S. Atty., Addison B. Pratt, Asst. U. S. Atty., and Claude A. Thompson, Asst. U. S. Atty., for plaintiff.

William C. Orr, of New York City, for defendant Mary E. Fitts.

MAYER, District Judge. The evidence in this case shows that on or about July 1, 1899, Friend P. Fitts died in and a resident of the county and state of New York, in the Southern district of New York, and in the Third internal revenue collection district of New York, leaving him surviving his widow, Mary E. Fitts, and his son (by a previous marriage), William B. Fitts. Decedent left a last will and testament which was duly admitted to probate by the surrogate of the county of New York on or about July 14, 1899. In his will decedent appointed defendants as executrix and executor, respectively, letters testamentary were issued to them, and they duly qualified as executrix and executor. The legacy to defendant Mary E. Fitts was $30,000, and to defendant William B. Fitts $183,575 (order of surrogate dated October 13, 1899). The so-called Spanish War revenue tax on the clear value of the interest in the personal property passing by the will, exclusive of the interest of those persons whose legacies were exempt from taxation, amounted to $2,726, and now, with interest and penalty, has risen to over $5,000.

The widow, Mary E. Fitts, has been an invalid for many years, and under such disability that she must be wheeled about in a chair, and is unable to walk. It is stipulated that she never had the actual phys-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ical possession of or control over any of the assets or property of the estate of her deceased husband, and that none of such property actually came into her hands except her legacy of $30,000 and $2,165, the commission as executrix, to which she might have been entitled. It is further stipulated that she did not participate in the administration by defendant William B. Fitts, nor interfere with him in taking possession of and managing the estate and property of the decedent. On the contrary, defendant William B. Fitts (who then resided and apparently still resides in England) was the sole person to present an account to the surrogate of the county of New York and to petition for the judicial settlement thereof, and in that proceeding defendant Mary E. Fitts was cited as would be any person adverse to the accounting and she did not join in the petition. The accounts were judicially settled by the surrogate of the county of New York, a decree entered, and distribution made prior to the commencement of this action, so that there are now no funds in the hands of Mary E. Fitts in her capacity as executrix, and the only funds which ever came actually into her possession were the $30,000 of legacy and the commission as above stated.

This action was not commenced until July 17, 1905. Both defendants were served, defendant Mary E. Fitts appearing and answering, but William B. Fitts only appearing, and thereafter making default in pleading. When the case of Eidman v. Tilghman, 136 Fed. 141, 69 C. C. A. 139, was affirmed by a divided court in October, 1906 (203 U. S. 580, 27 Sup. Ct. 779, 51 L. Ed. 326), which for the time being precluded the possibility of success in most of the legacy tax cases then pending, this case, as counsel for the government states, was laid aside with others, until another case might be brought before the Supreme Court. Thereafter, on May 31, 1910, Hertz v. Woodman, 218 U. S. 205, 30 Sup. Ct. 621, 54 L. Ed. 1001, was decided by the Supreme Court. When the case at bar appeared upon the calendar, it was found that the original complaint was defective, and an amended complaint was filed and served on attorneys for both defendants in December, 1911. Defendant Mary E. Fitts again answered, but defendant William B. Fitts again defaulted, and then the cause finally came on for trial.

The theory of plaintiff's action is that the United States may sue defendants as executors to recover these taxes as for a debt, or, in any event, that defendants, as executors, have constructive possession of the personal estate of the decedent, and are therefore liable. The defendant Mary E. Fitts as executrix resists recovery, and asks for the direction of a verdict on the following grounds: (1) There is no provision in law whereby a common-law action can be instituted to recover this tax. (2) No action can be instituted against the executors or administrators of a decedent's estate except in connection with or growing out of some transaction on the part of the decedent. (3) If any common-law action can be instituted to recover this tax, it should be against the defendants individually, and not in their representative capacity. (4) The action is solely an action in rem to proceed against the property for the satisfaction of the tax. (5) The .

amended complaint is defective, in that it does not allege the performance of any act on the part of the collector except a conclusion that the collector assessed a tax. (6) The plaintiff is barred by the statute of limitations by virtue of the provisions of sections 383 and 389 of the New York Code of Civil Procedure. It is desirable to dispose of some of the contentions of defendant Mary E. Fitts preliminary to a consideration of the more important questions in issue.

[1] The third defense in the answer of Mary E. Fitts setting up the statute of limitations is not available as against the United States. United States v. Thompson, 98 U. S. 486, 25 L. Ed. 194.

As to the fifth ground above referred to, I am of the opinion that the complaint sets forth sufficiently the compliance by the collector of internal revenue with the statute, but, if it does not, I grant the motion made at the trial to amend the complaint in that regard so as to conform with the proof, and the proof in this respect was complete.

[2] Sections 29 and 30 of the War Revenue Act of June 13, 1898, are identical in phraseology (except as to amount of tax, etc.) with sections 124 and 125 of chapter 173 of the Statutes of 1864. Act June 30, 1864; 13 Stat. at Large, p. 285. The 1864 act was passed during the Civil War to provide for internal revenue to support the government, to pay interest on the public debt and for other purposes. Obviously, the act of 1898, so far as it affects the subject-matter of this controversy, was copied from the act of 1864, and the Congress doubtless had in mind that the act of 1864 had received judicial and practical construction which would be binding upon the courts and upon administrative officers, or, at least, valuable in the interpretation and execution of the act of 1898. Under these circumstances, a decision of a court of authority and competent jurisdiction which has remained unchallenged for many years should be controlling upon this court.

The precise question here presented came up under the act of 1864, supra, before the District Court of the United States for the Eastern District of Pennsylvania in 1886. Butler, J., held that the statute provided a specific method for collecting the tax on legacies and successions; that the tax was made a lien on all the decedent's property, and that, in case the executor did not pay it to the collector, provision was made in the statute whereby the lien should be enforced by suit against any one having possession and the property be sold under the judgment. It was pointed out that there was no provision for suit against the executor or administrator, and that, as the statute provided a method for enforcing compliance with its terms, no other remedy could be resorted to. U. S. v. Trucks' Adm'r (D. C.) 27 Fed. 541. This decision was upheld by the Circuit Court of the Third Circuit in United States v. Trucks' Adm'r, 28 Fed. 846, in an opinion by McKennan, J. The question was squarely before the court and the decision went to the merits, the court holding that a common-law action could not be maintained to enforce the payment of legacy taxes imposed by the act of June 30, 1864, and that the United States must

pursue the remedy of the statute where the tax had not been paid. The act of 1898 being, as heretofore pointed out, literally the same in this regard as the act of 1864, it may be said that the Trucks' Case has been authority for 25 years, and any other interpretation would hardly be justified in a court of first instance. But, as there are some other cases pending, in which the same questions may arise, it may be well to consider the insistent contention of the government that the Trucks' Case was wrongly decided and in disregard of the authority of Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80. In the Dollar Savings Bank Case the tax was a debt. The savings bank was a live banking institution, and liable for the debt. In United States v. Chamberlin, 219 U. S. 250, 31 Sup. Ct. 155, 55 L. Ed. 204, decedent had failed to affix the proper amount of internal revenue stamps upon a deed of conveyance as required by the act of June 13, 1898, and the United States sued his executors. Manifestly the amount sought to be recovered was a debt of the decedent. In the case at bar all are agreed that the amount sued for was not a debt of the decedent, but is a tax upon the incident of succession. It follows that the tax levied and payable under the provisions of sections 29 and 30 of the act of 1898 is not a debt of the decedent's estate for which under those sections executors are liable in their representative capacity, so that a judgment would go against them in that capacity. If it was otherwise intended, it would seem that the Congress could readily have expressed such intention in a statute framed, as this was, with great care and providing a rather elaborate plan of execution, the fundamental purpose of which was to follow the property subject to the tax wherever it could be found. In section 30 of the act of 1898, as in a similar section of the act of 1864, the collector was authorized to commence appropriate proceedings against such persons "as may have the actual or constructive custody or possession of such property or personal estate, or any part thereof, and shall subject such property or personal estate, or any portion of the same, to be sold upon the judgment or decree of such court, and from the proceeds of such sale the amount of such tax" shall be paid. As against legatees, it has been held that the remedy is in rem, and not in personam, and that the procedure of the statute must be followed. United States v. Allen, 9 Ben. 154, 24 Fed. Cas. 770. At any time prior to the distribution of an estate in an action or proceeding to recover the tax, an executor would be a defendant in his representative capacity, not upon the theory of a judgment against him as executor, but on the theory that he must be brought into court as an executor, because in that capacity he would have the actual or constructive custody or possession of the property subject to the tax, and, having thus been brought in, the property would be sold and the tax satisfied out of the proceeds of sale.

The amount of the tax, of course, would be assessed upon the amount of the legacies, and (except costs and expenses) the United States could not recover beyond the amount of the tax, and, where the executor had actual or constructive possession of the property, there could not be any situation where the ultimate result would leave an

unsatisfied judgment against the executor. To illustrate: If an executor had in his actual or constructive possession a sum of $25,000, to the beneficial interest in which a legatee of a certain class was entitled (section 29, par. 3), the tax would be $750. To recover this the United States would begin an action against the executor having actual or constructive possession of the property of decedent and the ultimate result would be the recovery of $750 out of the rem. Thus, whether the executor paid before the action ended or whether payment was obtained out of the sale, there would not be any unsatisfied judgment against the executor. That the theory of the act accords with this view is further demonstrated by the careful phraseology of section 29. The Congress might have provided in some appropriate language that an action would be maintainable against executors, administrators, or trustees. But the act reads, not that the executor is subject to the tax, but "that any person or persons having in charge or trust as administrators, executors, or trustees any legacies * * * shall be, and hereby are, made subject to a duty or tax, to be paid to the United States. * * *" As the tax is not a debt of the decedent but a burden on the incident of succession, it may be that, if the executor fails to pay the tax before distribution, in addition to other penalties under the act, he would be liable individually for the payment of the tax. But whether he would be liable and when he would be liable might well be the subject of interesting discussion; for it may be urged, among other contentions, that, before he could be held liable, the United States would be bound to exhaust every other remedy under the statute. It is for this reason that the question as to whether defendants are properly sued as executors or whether they should be sued as individuals is substantial, and does not suggest merely a fine technical distinction.

Finally, counsel for the government contends that in any event section 3213 of the Revised Statutes (U. S. Comp. St. 1901, p. 2083), read in connection with section 31 of the Act of 1898, authorizes and justifies the action here brought. Section 31 makes "all administrative, special or stamp provisions of law, including the laws in relation to the assessment of taxes not heretofore specifically repealed" applicable to the act. Undoubtedly section 31 comprehends the authority given under section 3213 of the Revised Statutes as follows:

"And taxes may be sued for and recovered in the name of the United States, in any proper form of action, before any Circuit or District Court of the United States for the district within which the liability to such tax is incurred, or where the party from whom such tax is due resides at the time of the commencement of the said action."

By said section 3213 the suit for taxes obviously must be against "the party from whom such tax is due." It is therefore begging the question to assert that the action in the case at bar was authorized by section 3213. The fundamental inquiry in this regard is, Who is the party from whom the tax is due? If the tax is due from defendants as individuals because of their failure to comply with the statute, then the action should have been against them individually and not as executors. It is, however, urged on this head

that, notwithstanding that the property has passed out of the possession of defendant Mary E. Fitts as executrix, she still has constructive possession thereof.

I think this is rather a strained view in face of the fact that the act provides that, where a person has the actual or constructive possession of the property, then the property shall be subjected to sale. It is obviously a futile proceeding here to obtain a judgment against Mary E. Fitts who no longer has the property, and it is further apparent that the constructive possession to which the act refers is a possession where the executor has the right to property but not the actual custody thereof. Where complete control is lost, there cannot be constructive possession, and surely no action by Mrs. Fitts to recover the distributed legacies could be successful.

There are some other differences between the statute discussed in the Dollar Savings Bank Case and that here under consideration, but it is unnecessary to indulge in any further comment on that line.

Verdict is directed against plaintiff in favor of defendant Mary E. Fitts.